IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAUREEN TOOMEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No.  07 CV 7173 |
| ) | |
| SANOFI-AVENTIS U.S. INC. ) | Judge Blanche M. Manning |
| F/K/A AVENTIS PHARMACEUTICALS ) | Magistrate Judge Martian C. Ashman |
| INC., f/k/a HOECHST MARION ) | |
| ROUSSEL, INC.; WALGREEN CO.; ) | |
| BOND DRUG COMPANY OF ILLINOIS ) | |
| d/b/a WALGREEN CO., a Corporation, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO REMAND PURSUANT TO U.S.C. § 1447(c)**

NOW COMES Plaintiff Maureen Toomey, by and through her attorneys, POWER ROGERS & SMITH, P.C., hereby moves this Honorable Court to Remand this matter back to the Circuit Court of Cook County, Law Division, pursuant to 28 U.S.C. §1447(c). In support thereof, Plaintiff submits as follows:

**A.   Factual Background**

1.    In 2005, Plaintiff Maureen Toomey (hereinafter referred to as "Maureen") had a history of sinus infections. On August 24, 2005, Maureen was prescribed Ketek for her sinusitis. (*See Attached Exhibit A,* Plaintiff's Complaint at Law, ¶4) On August 25, 2005, Maureen had her prescription for Ketek filled at a Walgreens store located at 2100 Green Bay Road, Evanston, Illinois. (*See Ex. A,* ¶5)

2.    Within two weeks of ingesting the Ketek, Maureen began to experience serious medical problems, beginning with darkening urine and nausea. (*See Ex. A,* ¶7) Maureen

subsequently developed pancreatitis and an unknown caused hepatitis. (*See* Ex. A, ¶11) Maureen was eventually diagnosed with auto-immune hepatitis. (*See* Ex. A, ¶17,19,21)

3. On August 17, 2007, Plaintiff Maureen Toomey filed her Complaint at Law in the Circuit County of Cook County against two defendants, Sanofi-Aventis U.S. Inc., and Walgreen Co. (*See* Ex. A) Defendant Sanofi-Aventis is the alleged manufacturer of Ketek and Defendant Walgreen Co. is the alleged distributor of Ketek.

**B.     Procedural Background**

4. On October 30, 2007, Defendant Walgreen Co. filed its motion to dismiss Plaintiff's Complaint at Law pursuant, in part, to the Illinois Distributor's Act, 735 ILCS 5/2-621. (*See Attached Exhibit B*) In support of its motion to dismiss, Defendant Walgreen Co. supplied an affidavit from William Groth, Walgreen Co.'s Divisional Merchandise Manager for Pharmaceutical Buying from 1999 until the present day. (*See Attached Exhibit C*)

5. Defendant Walgreen Co.'s motion to dismiss is currently pending in the Law Division of Cook County. There is no hearing date set for Walgreens' motion to dismiss.

6. On December 21, 2007, Defendant Sanofi-Aventis filed its notice of removal. (*See Attached Exhibit D*) Plaintiff Maureen Toomey now files her timely motion to remand pursuant to 28 U.S.C. §1447(c).

7. Section 1447(c) states in relevant part:

> A motion to remand the case on the basis of any defect other than the lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under Section 1446(a). If at any time before final judgment it appears the district court lacks subject matter jurisdiction, the case shall be remanded..."

(*See 28 U.S.C. 1446(c)*)

8. Where removal is defective because of a lack of subject-matter jurisdiction, remand

may take place without a motion to remand, and at any time before final judgment. *Western Securities Co., v. Derwinski*, 937 F.2d 1276 (7th Cir. 1991); *O'Connor v. Hilton Hawaiian Village*, 763 F.Supp. 1544 (D. Haw. 1990). Plaintiff Toomey contends Defendant Sanofi-Aventis' basis of removal [complete diversity premised upon fraudulent joinder] is erroneous. As Plaintiff's remand is premised upon subject matter jurisdiction, her motion to remand is timely.

C. **Plaintiff's Motion To Remand Must Be Granted As Complete Diversity Is Lacking**

9. Defendant Sanofi-Aventis filed its notice of removal alleging that Plaintiff fraudulently joined Defendant Walgreen Co., an Illinois corporation. (*See Ex. B, ¶¶14-18*)

10. Fraudulent joinder involves claims against an in-state defendant that simply have no chance of success. *Chicago R.I. & P.R. Co. v. Whiteaker*, 239 U.S. 421, 424 (1915). In order to establish that an in-state defendant has been fraudulently joined, the removing party must show that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court. *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983).

11. The district court, to reach a determination of the issue of fraudulent joinder, must "evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff." *Id.* The district court, to reach a determination of the issue of fraudulent joinder, must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff. *Id.* Any uncertainties as to the current state of controlling substantive law must be resolved in favor of the plaintiff. *Id.* If there is even a possibility that a state court would find a cause of action stated against any one of the named in-state defendant on the facts alleged by the plaintiff, then the federal court must find that the in-state defendant have been properly joined, that there is incomplete diversity, and that the case must be remanded to the state court. *Id.* The burden of persuasion placed on those who allege

3

fraudulent joinder is a heavy one. *Id.*

12. Defendant Sanofi-Aventis argues that pursuant to the motion to dismiss and supporting affidavit filed by Defendant Walgreen Co., premised upon the Illinois Distributor Statute, Plaintiff's naming of Walgreens was fraudulent as there is no possibility that the Plaintiff would be able to establish a cause of action against it. As such, complete diversity exists as there is no viable in-state defendant. (*See Ex. D,* ¶¶14-18) This argument lacks merit.

13. The Illinois Distributor Statute states as follows, in relevant part:

§2-621. **Product liability actions.** (a) In any product liability action based on any theory or doctrine commenced or maintained against a defendant or defendants other than the manufacturer, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage. The commencement of a product liability action based on any theory or doctrine against such defendant or defendants shall toll the applicable statute of limitation and statute of repose relative to the defendant or defendants for purposes of asserting a strict liability in tort cause of action. (b) Once the plaintiff has filed a complaint against the manufacturer or manufacturers, and the manufacturer or manufacturers have or are required to have answered or otherwise pleaded, the court shall order the dismissal of a product liability action based on any theory or doctrine against the certifying defendant or defendants, provided the certifying defendant or defendants are not within the categories set forth in subsection (c) of this Section...(c) A court shall not enter a dismissal order relative to any certifying defendant or defendants other than the manufacturer even though full compliance with subsection (a) of this Section has been made where the plaintiff can show one or more of the following:

(1) That the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage; or

(2) That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or

(3) That the defendant created the defect in the product which caused the injury, death or damage. (*See 735 ILCS 5/2-621*)

14. Defendant Walgreen Co.'s motion to dismiss is supported by the affidavit of William

Groth. (*See Ex. C*) **In his affidavit**, Mr. Groth testified that the prescription drug Kerek was manufactured by Sanofi-Aventis U.S. Inc. (*See Ex. C,* ¶7) Mr. Groth further testified that Defendant Walgreen Co. "exercised no control over the design and manufacture of Ketek nor did Walgreen Co. provide instructions or warnings to the manufacturer of said drug." (*See Ex. C,* ¶8) Morever, Mr. Groth stated that "Walgreen Co. possessed no knowledge or information regarding any defect in Ketek which might or could have caused injury or damage to Plaintiff." (*See Ex. C,* ¶10) Mr. Groth's deposition testimony contradicted the statements within his affidavit and actually support Plaintiff's arguments regarding Walgreens' actual knowledge of the defects of Ketek.

15. **In his sworn deposition**, William Groth testified that he is currently employed as Walgreens' divisional manager for RX purchasing in the RX department. (*See Attached Exhibit E, Deposition of William Groth, pp.6-7*) Mr. Groth testified that he is employed on the "business side" of Walgreens, otherwise known as the purchasing side. (*See Ex. E, p.18*) Mr. Groth further testified that Walgreens has a health side of their business model, called the "operations side". (*See Ex. E, p.18*) He also testified that all complaints regarding adverse reactions to drugs such as Kerek, that information would be given to the operations side, not the purchasing side. (*See Ex. E, pp.24-25*) Mr. Groth testified that he has **nothing to do** with the operations side of the Wagreens business model. (*See Ex. E, pp.20-21*) Indeed, Mr. Groth testified that he would not have any actual knowledge regarding product defect reporting of a drug, such as Ketek:

Q. Now, if -- you're part of the purchasing side of Walgreens, correct?
A. Correct.

Q. Do you, if, for example, there were an adverse reaction report come in from a pharmacist, that would not go to you, but it would go to the operations side, I take it, true?
A. How someone contacts our company could be through many areas, I guess, through regular hotline, it could come to somebody in the company.

Q. Well, does Walgreens have a hotline?
A. Walgreens has a customer service line that customers call for any service issue.

Q. Well, if there was an adverse reaction is that the number they would call?
A. Not typically, I wouldn't think that would be the place to go, no.

Q. Well, where would be the place to go?
A. They would contact the local pharmacy at their store.

Q. And that local pharmacist, is there a system set up so he would notify someone of an adverse reaction?
A. There is a link within our system that allows -- that has addresses that they can report back to the manufacturer information on product defects.

**Q. Are you in that line of notification or would that be the operations side?**
**A. That's on the operations side.**

Q. Are you ever notified whether a pharmacist has had a complaint of an adverse reaction?
A. I have had pharmacists contact me and say they've had customer complaints and we direct them to report it through the pharmacy -- the product defect reporting system.

Q. And is that a Walgreens product defect reporting system?
A. Yes.

**Q. And are you ever in the chain regarding the product defect reporting system at Walgreens?**
**A. No.**

Q. That would be the operations side?
A. I can't answer where -- who actually sees it from any other side. The idea is it's supposed to be a reporting, it's how to contact the actual manufacturer by the pharmacist. I can't tell you whether that -- if a pharmacist activates that and sends a report to a manufacturer, who else within the company would see that, I don't know if anyone does or if a number of people do, I have no idea.

**Q. Well, would it be fair to say if someone does receive notification of that, it would be on the operations side and not the purchasing side?**
**A. I can say I don't receive anything through that system.**

(*See* Ex. E, pp.20-21)

16. Based upon his sworn deposition testimony, its obvious that Mr. Groth lacks the requisite knowledge to offer opinions regarding whether Walgreens had actual knowledge of the

6

defect in the drug Ketek, which caused Maureen's injury. Furthermore, Mr. Groth is unable to offer testimony regarding whether Walgreens exercised control over the design of the defective product Ketek:

Q. You make a statement, Walgreen exercised no control over the design and manufacture of Ketek nor did Walgreens Company provide instructions or warnings of the manufacturer of said drug. How would you know that?
A. I can only speak for myself as a purchasing agent, we had no -- we had no contact with them on the design of the product at all.

**Q. Well, what about on the operations side, do you know whether the operations side had any contact with them at all?**
**A. I don't know.**

(*See* Ex. E, p.22)

17.     Importantly, William Groth opines that he was aware at the time Ketek was launched that there had been some problems related to the liver from Ketek. (*See* Ex. E, p.11)

18.     As the above testimony shows, William Growth's testimony, upon which Walgreens' motion to dismiss relies on, is unreliable and contradicts his affidavit. He admits that he is not a member of the Walgreens department [operations] which would get any information or notification regarding product defects, if such information became available. Mr. Growth testifies that he is not ever within the chain regarding the product defect reporting system at Walgreens. (*See* Ex. E, p.21) Accordingly, Mr. Groth's affidavit statement regarding the information Walgreens possessed for any product defect in Ketek is faulty and unreliable. On this point alone, Walgreens' motion must fail.

19.     As Sanofi-Aventis' removal is premised upon Walgreens' motion, this Court must remand this matter back as the Defendant's allegation of fraudulent joinder is erroneous. Walgreens was properly named in the Cook County case. Complete diversity is lacking in this matter ans as such, Defendant's notice of removal was improper.

Respectfully submitted,
**POWER ROGERS & SMITH, P.C.**


By:   s/Joseph A. Power, Jr.

Joseph A. Power, Jr.
Sean M. Houlihan
**POWER ROGERS & SMITH, P.C.**
70 West Madison Street; Suite 5500
Chicago, IL 60602
Telephone: (312) 236-9381
Fax: (312) 236-0920
Attorney Code #02655926

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 25, 2008, I electronically filed Plaintiff's Memorandum in Support of Motion to Remand Pursuant to U.S.C. Section 1447(c) with the Clerk of the Court using the CM/ECF system which will send notification to such filing(s) to the following:

Donald Brown, Jr.
Email: donald.brown@dbmslaw.com

Bryan Jonathan Kirsch
Email: bryan.kirsch@dbmslaw.com

John A. Childers
Email: childersj@jbltd.com

Michael C. Holy
Email: holym@jbltd.com

John A. Childers
Email: childersj@jbltd.com


                                         Respectfully submitted,


                                         /s/Joseph A. Power, Jr.
                                         Power, Rogers & Smith, P.C.
                                         Attorneys for Plaintiff
                                         70 W. Madison St., 55th FL.
                                         Chicago, IL. 60602
                                         312/236-9381
                                         Fax: 312/236-0920